PATRICK C. FENELON *vs.* ROSE M. FENELON.

Suffolk.    June 27, 1922. — February 26, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Probate Court,* Appeal, Decree *nunc pro tunc. Supreme Judicial Court. Death. Husband and Wife.*

While there was pending in this court after argument and before decision an appeal from a decree entered by order of a single justice affirming a decree of the Probate Court granting a petition for a decree under St. 1906, c. 129 (now G. L. c. 209, § 36), there was filed in this court an agreement by the attorneys for the parties. that the petitioner had just died. The record did not disclose the appointment. of an executor of his will or of an administrator of his estate. After consideration of the appeal on the merits, the decree of the single justice was affirmed and the rescript directed the entry of the decree of affirmation *nunc pro tunc* as of a certain date preceding the death of the petitioner.

The practice in appeals from decrees entered by a single justice of this court upon. an appeal from a decree of the Probate Court previous to 1920 followed the practice in equity; and such a decree of a single justice based on findings in the report of a master which contained no report of the evidence must stand unless. upon the face of the report the findings were mutually inconsistent or contradictory and plainly wrong.

A master, appointed by a decree entered by order of a single justice of this court. upon an appeal by the respondent from a decree of the Probate Court granting a petition, filed in 1917, by a husband that it be adjudged that his wife had deserted him and that he was living apart from her for justifiable cause, found, besides detailed subsidiary findings and without a report of the evidence that, previous to the bringing of the petition "the petitioner had sought to have his wife resume

marital relations with him, but that the respondent, being thereto influenced by her daughter, refused to live with him unless the daughter should live with them . . . that the petitioner, by the attitude and conduct of the daughter toward him since the fall of 1914, was justified in making it a condition of resuming marital relations with the respondent that the daughter should not live with them . . . that at" the time his petition was filed, " he was living apart from the respondent for justifiable cause; that her refusal to live with him unless their daughter was to live with them was in effect desertion on her part; and that the allegations of his petition are sustained by the evidence." *Held*, that, although a different finding might have been made by the master, it could not be said that the findings of the master were wrong, and the decree was affirmed.

At the hearing before the master of the petition above described, the petitioner in cross-examination, to the question, "Are you now willing to live with your wife?" answered, "No;" and to the further question, "Are you willing to live with your wife if your daughter does not live with you?" replied, "I should have to take that under consideration, I think I would not." *Held*, that such answer did not require a finding adverse to the petitioner.

PETITION, filed in the Probate Court for the county of Suffolk on January 18, 1917, under St. 1906, c. 129, for a decree that the respondent had deserted the petitioner, her husband, and that he was living apart from her for justifiable cause.

In the Probate Court, by order of *George*, J., a decree granting the petition was entered on January 8, 1918, and the respondent appealed. In the Supreme Judicial Court the case was referred to a master. Material findings by the master are described in the petition. Exceptions by the respondent to the master's report were heard by *Jenney*, J., by whose order there were entered an interlocutory decree overruling the exceptions and confirming the report and on April 3, 1922, a final decree affirming the decree of the Probate Court and remanding the case to that court for further proceedings. The respondent appealed.

On December 5, 1922, while the appeal was under consideration by this court, there was filed an agreement of the counsel for the parties that the petitioner had "died about 5 A.M. on December 1, 1922."

The case was submitted to the court on briefs in June, 1922, and afterwards was submitted on briefs to all the Justices except *Jenney*, J.

*O. Storer & J. L. Lucas*, for the respondent.

*F. T. Conley*, for the petitioner.

RUGG, C.J. This is a petition under St. 1906, c. 129, G. L. c. 209, § 36, alleging that the petitioner is living apart from his wife

for justifiable cause; that she has deserted him and he desires to be relieved "of the disabilities of coverture so far as to be enabled to dispose of his personal and real estate without his wife's written consent in the same manner and with the same effect as if he were sole;" and praying for a decree establishing the fact of such desertion and that he is living apart from his wife for justifiable cause. In the Probate Court a decree was entered for the petitioner. On appeal to the Supreme Judicial Court the case was referred to a master; the exceptions to his report were overruled and a decree was entered for the petitioner. The respondent appealed.

Before it was practicable to reach a determination as to the questions presented by this appeal and to prepare an opinion expressive of the decision, the fact of the death of the petitioner on December 1, 1922, was called to the attention of the court. So far as we are aware, no executor of a will of the petitioner or administrator of his estate has been appointed. No such representative has been admitted as a party in the case.

In considering the disposition of any cause, the court takes cognizance of subsequent events of decisive import brought to its notice as having supervened since the proceeding was instituted. *Sullivan* v. *Secretary of Commonwealth*, 233 Mass. 543, and cases collected.

As matter of practice at common law as well as under G. L. c. 235, § 4, judgment will be entered, where the material facts are settled in any way recognized as proper by the law during the lives of the parties, as of a preceding day, whenever the cause has been continued or postponed for the purpose of obtaining a decision of questions of law and the intervening death of a party would otherwise affect the rights of parties. If, for example, death of a party occurs after verdict, delay for argument or decision of questions of law upon which its validity depends "will not be suffered to deprive one of the benefits to which he appears to have been justly entitled under it. . . . Although technically there can be no appearance for a deceased party, yet this court will pass upon the questions so submitted, and hear suggestions as to their merits, from any one who holds the office of an attorney within the court." *Kelley* v. *Riley*, 106 Mass. 339, 341, 342. The practice there indicated has been followed as nearly as practicable in the case at bar. Although the case had been fully argued before

the death of the petitioner, the attorney who represented him at the oral argument and the attorney for the respondent have accepted the invitation of the court to make such supplementary written argument as seemed to them appropriate. The case at bar on this point is distinguishable from *Rice* v. *Rice,* 184 Mass. 488, where the facts were not settled before the death of one of the parties.

The case will be considered on its merits and the order for final decree will be dated *nunc pro tunc* as of a date before the death of the petitioner. *Perkins* v. *Perkins,* 225 Mass. 392, and cases there cited and reviewed.

The final decree was based upon the master's report. This court stands where the single justice stood and must draw for itself proper inferences from the master's report. The facts found by the master, the whole evidence not being reported, must stand unless upon the face of his report they are mutually inconsistent or contradictory and plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 333, 334. The practice in probate appeals follows equity. *Churchill* v. *Churchill,* 239 Mass. 443, 445.

After recital of considerable testimony, the master finds "that prior to the bringing of the present petition the petitioner has sought to have his wife resume marital relations with him, but that the respondent, being thereto influenced by her daughter, refused to live with him unless the daughter should live with them. I find that the petitioner, by the attitude and conduct of the daughter toward him since the fall of 1914, was justified in making it a condition of resuming marital relations with the respondent that the daughter should not live with them. If the petitioner's right to the relief sought by him is to be determined by the conditions existing at the time his petition was filed, January 15, 1917, I find on all the evidence that at that time he was living apart from the respondent for justifiable cause; that her refusal to live with him unless their daughter was to live with them was in effect desertion on her part; and that the allegations of his petition are sustained by the evidence."

It is not desirable to refer in detail to such testimony as is recited by the master. The relations between the petitioner and his wife were strained and unhappy. A different finding might have been made. This is a case where there is especial reason for

not overturning the decision of a magistrate who saw the witnesses face to face and observed their manner of testifying. He had means for reaching the truth which are not open to those who can only read the printed page. Without going over the case part by part, it is enough to say that we cannot adjudge that the ultimate findings of the master are not right and are plainly wrong. Those findings in substance and effect were that the respondent had deserted the petitioner by refusing to live with him under such conditions as he reasonably might stipulate.

On cross-examination the petitioner answered the question, "Are you now willing to live with your wife?" in the negative, and to the further question, "Are you willing to live with your wife if your daughter does not live with you?" he answered, "I should have to take that under consideration. I think I would not." These answers do not require a finding adverse to the petitioner. This aspect of the case is governed by *Ford* v. *Ford*, 143 Mass. 577. It there was said, at page 579, "When one party terminates the cohabitation by desertion, the other is not bound to take any steps to restore it. If he remains silent until he files his libel, his silence does not take away his right to a decree. Conduct which in itself is proper cannot be made improper by inquiring what he would have done in an event which did not happen. The mode of testing that was for the wife to offer to return. . . . In general, a person does not lose rights which he may lawfully renounce, until he has renounced them by an overt act. With reference to the present case, we may remark that a contrary doctrine would make a divorce for desertion almost always unattainable without perjury. For, except in unusual circumstances, it is not to be supposed that a libellant would have been willing to receive the libellee back, if the latter had offered to return on the day before the libel was filed."

It follows that in the opinion of the majority of the court no reversible error of law is shown on a careful examination of the whole record.

*Decree affirmed as of November 27, 1922.*